**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 20-212-DLB**

**JOSEPH ALAN JAMES, et al.**                                              **PLAINTIFFS**


**v.**                          **MEMORANDUM OPINION AND ORDER**


**BUREAU OF PRISONS, et al.**                                         **DEFENDANTS**

**\*\*\* \*\*\* \*\*\* \*\*\***

Plaintiff Joseph Alan James is an inmate confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington").  Proceeding without counsel, he has filed a civil rights Complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  *See* (Doc. # 1).  This matter is before the Court to conduct the preliminary screening required by 28 U.S.C. § 1915A.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012) (citations omitted).

In his Complaint, James alleges that two officers at FMC-Lexington "threatened to shoot me and other inmates with live ammunition for requesting to speak with them peacefully." (Doc. # 1 at 2).  However, neither of the officers is named as a Defendant in the Complaint.  Instead, the balance of James's Complaint is concerned with the efficacy of the steps taken to control the spread of Covid-19 at the prison.  James alleges that the prison is overcrowded; staff are not changing gloves often enough and are serving food with their hands; the warden has transferred infected inmates to previously uninfected areas of the prison; and that inmates are not receiving needed medical treatment.  *Id*. at

1

2–3.  James contends that these actions violate his right to due process and to freedom of speech and constitute cruel and unusual punishment.  *Id*. at 4.  James asserts that the has exhausted his administrative remedies by "report[ing] it to OIG in Washington" and to family members, news agencies, President Trump, his attorney, and to "my judge."  *Id*. James seeks $200 million in damages.  *Id*. at 8.

James's Complaint suffers from numerous defects, and the Court concludes that the wisest course is to dismiss it without prejudice at this time so that James may file a proper complaint after he has exhausted his administrative remedies.

Since the beginning of April 2020, James's concerns with the Covid-19 pandemic have prompted him to file three motions in his criminal case seeking an earlier release from incarceration, *see United States v. Joseph Alan James*, No. 0:15-cr-255-SRN-1 (D. Minn. 2015) (Docs. # 60, 64, and 65), as well as two civil cases, in addition to this one, in this District seeking damages and an investigation of the manner in which the Bureau of Prisons ("BOP") is handling the crisis, *see James et al. v. Federal BOP et al.*, No. 5:20-cv-211-WOB (E.D. Ky.); *James v. United States*, No. 5:20-cv-197-JMH (E.D. Ky.).  On April 3, 2020, James filed a motion in his criminal case requesting his release to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), citing concerns related to the Covid-19 pandemic.  *James*, No. 0:15-cr-255-SRN-1 (Doc. # 60 therein).  Two weeks later, the trial judge denied the motion, both for lack of jurisdiction and for lack of merit. *See id*. (Doc. # 63 therein).  In early May, James filed a motion seeking a reduction in sentence under the CARES Act, *see id*. (Doc. # 65 therein), as well as another motion requesting that he be injected with COVID-19 to "get it over with and the antibodies gained

2

can be used to come up with a cure," *see id*. (Doc. # 64 therein).  While those motions remain pending, on May 19, 2020, the trial court granted the Federal Public Defender's motion to be appointed counsel to represent James in support of an upcoming motion requesting compassionate release.  *Id*. (Doc. # 68 therein).  A "Compassionate Release Investigation" report in furtherance of that motion was filed on May 22, 2020.  *Id*. (Doc. # 69 therein).

On May 14, 2020, in one of his civil cases in this District, James filed a two-page motion requesting that the court order that staff working at FMC-Lexington be quarantined for 14 days before being permitted to return to their homes in light of their asserted exposure to Covid-19.  *James*, No. 5:20-cv-197-JMH (Doc. # 1 therein).  That action was promptly dismissed for failure to properly initiate a civil action.  *Id*. (Doc. # 3 therein). A few days later, James and a dozen inmates filed a motion requesting that they be permitted to proceed as a class to challenge the manner in which the BOP was addressing Covid-19 infections at FMC-Lexington.  *See James*, No. 5:20-cv-211-WOB. That action was also dismissed on numerous procedural grounds.  *Id*. (Doc. # 4 therein). James did not seek pauper status in either case, and the Court did not require payment of a filing fee.

In this case, James did file a proper Complaint and a Motion to Proceed *In Forma Pauperis*.  *See* (Docs. # 1 and 2).  However, numerous shortcomings in the Complaint and the fee Motion warrant dismissal.[1]  First, the Complaint lists Tony Allen Stonell and

---

[1]  James is technically liable for the $400.00 filing fee notwithstanding the dismissal of his Complaint.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 605 (6th Cir. 1997), *abrogated on other grounds in Jones v. Bock*, 549 U.S. 199 (2007).  However, the Court finds that a more forgiving approach is to defer collection of any filing fee unless and until James files a new action after

William Marks as co-Plaintiffs, *see* (Doc. # 1 at 1), but neither of these persons signed the Complaint, and there is no indication that either of them has joined James in the filing. Second, James identifies the "BOP Bureau of Prisons" and "FMC-Lexington" as Defendants, but neither of these entities are proper defendants in a *Bivens* action, which only permits suit against federal officers sued in their individual capacities. *See Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011).

Third, James's allegations do not suggest a colorable due process or First Amendment claim, and he does not allege that Warden Francisco Quintana subjectively perceived and then ignored a risk of serious harm to him as required to plead the subjective component of an Eighth Amendment claim. *See Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). Finally, James acknowledges that instead of invoking and exhausting the formal administrative remedies available to him through the BOP's Inmate Grievance Program, he reached out informally to "OIG," his family, and President Trump about his complaints. (Doc. # 1 at 4). However, "mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion" to excuse a prisoner's admitted failure to satisfy the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (citations omitted). Dismissal without prejudice is therefore required.

Accordingly, **IT IS ORDERED** as follows:

(1)    James's Complaint (Doc. # 1) is **DISMISSED WITHOUT PREJUDICE**;

(2)    All pending motions are **DENIED AS MOOT**; and

---

exhausting his administrative remedies. *Accord Owens v. Keeling*, 461 F.3d 763, 773 (6th Cir. 2006) (citations omitted).

(3)     This matter is **STRICKEN** from the docket.

This 30th day of May, 2020.



Signed By:

_**David L. Bunning**_

**United States District Judge**

J:\DATA\ORDERS\PSO Orders\James 20-212 MOO Dismissing.docx

5